UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

UNITED STATES OF AMERICA,   Court File No. 14-cr-135 (ADM/LIB) (1)

      Plaintiff,

v.   **REPORT AND RECOMMENDATION**

James Derek Myers,

      Defendant.

---

This matter came before the undersigned United States Magistrate Judge upon Defendant James Derek Myers's Motion to Suppress Evidence Obtained as a Result of Search and Seizure, [Docket No. 22]. This case has been referred to the undersigned Magistrate Judge for a report and recommendation, in accordance with 28 U.S.C. § 636(b)(1) and Local Rule 72.1. The Court held a motions hearing on June 12, 2014, regarding the parties' pretrial discovery motions[1] and Defendant's Motion to Suppress.

For reasons discussed herein, the Court recommends that Defendant's Motion to Suppress Evidence Obtained as a Result of Search and Seizure, [Docket No. 22], be **DENIED**.

I. **BACKGROUND AND STATEMENT OF FACTS**

    A. **Background**

Defendant James Derek Myers is charged with one count of possession with intent to distribute actual methamphetamine, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(A); one count of felon in possession of firearms, in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2); and one count of felon in possession of a firearm and ammunition, in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2). (Indictment [Docket No. 1]).

---

[1] The Court addressed the parties' discovery motions by separate Order, [Docket No. 32].

B.     Facts[2]

The present record before the Court indicates that law enforcement executed five search warrants in connection with the present case. (Government Exs. 1-5). On January 3, 2014, the Honorable Shaun R. Floerke, District Judge for the Sixth District of the State of Minnesota, determined that probable cause supported the issuance of a search warrant for Defendant's residence, Defendant's person, Defendant's 1999 black Toyota Camry, and any other vehicles parked at Defendant's residence and associated with Defendant upon execution of the warrant. (Government Ex. 1 at 1). Specifically, the warrant was directed towards the search for and seizure of controlled substances (cocaine, methamphetamine, heroin, and marijuana), associated paraphernalia, associated books and/or record-keeping materials, and other items commonly associated with drug selling/trafficking/distributing, as enumerated in the search warrant. (Id. at 1-2).

Lake County Sheriff's Office Investigator Richard DeRosier[3] drafted the application for and affidavit in support of the January 3, 2014, search warrant. The affidavit states that investigators with the Lake Superior Drug and Violent Crime Task Force had been working with several confidential reliable sources (CRSs) who provided information to the task force regarding individuals involved in the sale, distribution, and use of controlled substances; the affidavit states that the CRSs had proven reliable, as indicated by their participation in successful

---

[2] The facts are derived from Government Exhibits 1-5, introduced into the record at the June 12, 2014, motions hearing.

[3] Richard DeRosier is a narcotics investigator with the Lake County Sheriff's Office, an investigator with the Lake Superior Drug and Violent Crime Task Force, and a task force officer with the Bureau of Alcohol, Tobacco, Firearms, and Explosives. He investigates controlled substance crimes. Investigator DeRosier has spent eleven years as a canine handler partnered with a narcotics detection canine and has completed academic courses and seminars in addition to his extensive narcotics investigation experience. Specific qualifications and expertise are detailed in Investigator DeRosier's affidavit in support of the January 3, 2014, search warrant. (Government Ex. 1 at 5-6).

controlled buys in the past.[4] (Id. at 7). Specifically, the affidavit states that CRS #1 represented to law enforcement that Defendant was selling methamphetamine, and that CRS #1 had purchased methamphetamine from Defendant in the past. (Id.) CRS #1 identified to law enforcement where Defendant lived (Defendant's residence) and correctly identified Defendant via a photograph devoid of identifying characteristics. (Id.) Within 72 hours of drafting the supporting affidavit, CRS #1, under the supervision of law enforcement, conducted a controlled buy of methamphetamine from Defendant at Defendant's residence. (Id.)

Investigator DeRosier's affidavit also states that investigators with the Lake Superior Drug and Violent Crime Task Force received information concerning Defendant from a second CRS, who provided law enforcement with information that identified Defendant as the individual from whom CRS #2 had purchased methamphetamine. (Id.) CRS #2 also identified the location of Defendant's residence. A third CRS informed law enforcement that they had been purchasing methamphetamine from Defendant at his home. (Id. at 7-8). The affidavit also provides information concerning Defendant's prior controlled substance and other felony convictions, and that, as provided by information available to law enforcement, Defendant drove a black Toyota Camry with Minnesota license plates. (Id. at 8).

On January 8, 2014, law enforcement obtained a second search warrant in connection with the present action. (Government Ex. 2). Judge Floerke again determined that probable cause supported the issuance of a search warrant for a storage locker located in Duluth, Minnesota.

---

[4] "CRS #1 has conducted a successful controlled buy of controlled substance within the past month. The controlled buy was conducted with 'buy money' and utilized both audio and video recording and surveillance. The controlled buy resulted in the seizure of controlled substance." (Government Ex. 1 at 7).

CRS #2 "has conducted multiple controlled buys resulting in the seizure of controlled substance . . . ." (Id.)

CRS #3 "has also conducted multiple controlled buys resulting in the seizure of controlled substance, the issuance of search warrants where controlled substance has been recovered and the arrest of individuals for controlled substance violations." (Id. at 7-8).

3

(Id.) This warrant also targeted controlled substances (cocaine, methamphetamine, heroin, and marijuana), associated paraphernalia, associated books and/or record-keeping materials, and other items commonly associated with drug trafficking, as enumerated in the search warrant. (Id. at 1-2).

Investigator DeRosier's affidavit in support of the January 8, 2014, search warrant incorporates the same probable cause statement articulated in his affidavit in support of the January 3, 2014, search warrant. (Id. at 4-5). Additionally, the affidavit in support of this second warrant states that upon executing the earlier January 3, 2014, search warrant for Defendant's person, Defendant's residence, and Defendant's black Toyota Camry, law enforcement seized a "substantial quantity (over 62 grams)" of controlled substance that field tested positive as methamphetamine, controlled substance that field tested positive as bath salts, ammunition and a .25 caliber handgun magazine, and U.S. currency. (Id. at 5). The affidavit in support of the January 8th warrant states also that since executing the January 3, 2014, search warrant, investigators had been in contact with a fourth known-reliable CRS (i.e., they had performed a controlled buy resulting in the seizure of controlled substance) who informed law enforcement that Defendant had a known storage locker, located in Duluth, Minnesota, and that Defendant was the only person with access to the locker. (Id.) CRS #4 further informed law enforcement that they had been to the storage locker and that the locker contained suspected stolen electronics, a handgun, and a sawed-off shotgun. (Id.) Law enforcement was able to determine that the subject storage locker was being rented by a Tara Lynn O'Daniel and that Defendant was listed as a contact person for the locker. (Id.) The affidavit states that law enforcement determined that O'Daniel associated with Defendant and other individuals whom task force investigators knew deal and use methamphetamine, and that O'Daniel has a criminal history

involving controlled substances. Upon executing the second search warrant, law enforcement took into custody various electronic goods, a .25 caliber automatic handgun, and a sawed-off shotgun, among other items. (Id.)

On January 14, 2014, the Honorable Eric Hylden, District Judge for the Sixth District of the State of Minnesota, issued a third search warrant associated with the present case, directed at obtaining Defendant's DNA. (Government Ex. 3). In support of law enforcement's application for the warrant, Investigator Jason Eikam stated in an affidavit that on January 3, 2014, an investigator with the Superior Police Department Narcotics Unit conducted a controlled purchase of a quantity of methamphetamine from Defendant at Defendant's residence; that investigators with the Lake Superior Drug and Violent Crime Task Force thereafter executed a search warrant at Defendant's residence and located over 60 grams of methamphetamine, digital scales and drug packaging, a .25 caliber handgun magazine, and over $5,000 in U.S. currency; that investigators later executed a second search warrant at Defendant's storage unit and recovered several firearms and a jail wristband bearing Defendant's name and photograph; that Defendant has a history of prior controlled substance convictions and a felony domestic assault conviction; and that Defendant is prohibited from possessing a firearm due to his prior felony convictions. (Id.) Affiant sought a search warrant for Defendant's DNA to compare with possible DNA to be recovered from the firearms recovered upon executing the January 3rd and January 8th search warrants. (Id.)

Law enforcement obtained a fourth search warrant on January 23, 2014. (Government Ex. 4). The warrant provided for law enforcement's search of Defendant' residence, Defendant's person, and Defendant's Nissan Pathfinder, specifically for methamphetamine and associated paraphernalia, as enumerated in the search warrant. (Id. at 1). In support of the January 23, 2014

5

application for this fourth search warrant, Investigator Deserie Miller drafted an affidavit incorporating Investigator DeRosier's statement of probable cause in support of the January 3, 2014, search warrant; a statement of the items recovered during law enforcement's execution of the January 3, 2014, search warrant; and a statement of the items recovered during law enforcement's execution of the January 8, 2014, search warrant. (Id. at 5-6). The affidavit further provides that yet another confidential, reliable informant (CRI)[5] corroborated information about Defendant provided by other CRIs and informed investigators that they had personally observed Defendant with a substantial quantity of methamphetamine in Defendant's vehicle within the previous 48 hours. The affidavit further states that within the previous 24 hours, investigators had witnessed a high volume of short-term traffic at Defendant's residence. (Id.) Investigators witnessed Defendant driving a gold Nissan Pathfinder. (Id. at 6). Investigators witnessed the vehicle parked outside Defendant's residence. (Id.)

Finally, also on January 23, 2014, law enforcement obtained a fifth search warrant, for Defendant's black Toyota Camry.[6] (Government Ex. 5). This fifth and final search warrant

---

[5] The affidavit states that CRI #4 had proven reliable via their past cooperation with law enforcement in providing information that led to the seizure of firearms which were in the possession of a convicted felon who was prohibited from possessing firearms. (Government Ex. 4 at 6).

[6] There appears to the Court to be a typographical error on the first page of Government Exhibit 5. On January 23, 2014, Investigator Miller applied for a warrant to search Defendant's black Toyota Camry. (Id. at 3). The warrant, accordingly, explicitly authorizes law enforcement's search of the black Toyota Camry. (Id. at 2). However, the first page of the warrant itself states that Investigator Miller had applied for a search warrant to search Defendant's residence, Defendant's person, and Defendant's gold Nissan Pathfinder, rather than Defendant's black Toyota Camry. (Id. at 1).

This appears to the Court, by all indications, to be a simple typographical error. It is clear from Government Exhibit 5 that Investigator Miller applied for a search warrant for Defendant's black Toyota Camry and that the Court issued a search warrant for Defendant's black Toyota Camry. The fact that the search warrant itself mistakenly states the vehicle to be searched is an error the Court is inclined to consider immaterial. The Court finds this minor error to be insufficient to render the warrant, itself, invalid. "There are several cases in [the Eighth C]ircuit finding the particularity requirement satisfied although the description on the search warrant in question was not entirely accurate." United States v. Thomas, 263 F.3d 805, 807 (8th Cir. 2011) (collecting cases). In Thomas, the court was presented with a search warrant that listed an incorrect address. Id. at 809. However, the Thomas court upheld the search in part based on the fact that one of the officers involved in the search was personally familiar with the location to be searched, reducing the likelihood that officers would search the wrong residence. Id. (citing United States v. Gitcho, 601 F.2d 369, 371 (8th Cir. 1979) (same)). There is little to distinguish the present case from

concerned a second search of Defendant's black Toyota Camry. (Id.) Again, Investigator Miller's affidavit in support of the warrant rearticulates the statement of probable cause from Investigator DeRosier's affidavit in support of the January 3, 2014, application for search warrant; a statement of the items recovered during law enforcement's execution of the January 3, 2014, search warrant; and a statement of the items recovered during law enforcement's execution of the January 8, 2014, search warrant. (Id. at 5-6). The affidavit also rearticulates that a CRI personally witnessed Defendant with a substantial quantity of methamphetamine within 48 hours of the application, and that that CRI informed investigators that they had "missed" (presumably in previous searches) over one ounce of methamphetamine located in or around the glove box of Defendant's black Toyota Camry. (Id. at 6). The affidavit also states that on January 23, 2014, when executing the fourth search warrant described above, investigators noticed Defendant's black Toyota Camry parked nearby on a public road, and that a K9 officer from the Cloquet Police Department had his canine partner perform an exterior sniff around the Camry, as it was parked on a public roadway; the K9 officer informed the affiant that his canine partner had indicated the odor of a controlled substance near the trunk area of the Camry. (Id. at 7). Accordingly, the affiant, Investigator Miller, applied for this fifth and final search warrant in the present case for Defendant's black Toyota Camry, which was issued and executed later that same day. (Id.)

---

Thomas. That the face of the warrant issued by the state court said Nissan Pathfinder rather than Toyota Camry is no different than the face of the warrant in Thomas listing an incorrect address, where in the present case, the warrant application and the supporting affidavit referred to and established probable cause to search Defendant's Toyota Camry, and the officers executing the warrant searched Defendant's Toyota Camry. Thus, as in Thomas, the typographical misidentification of the place to be searched on the warrant itself does not violate the particularity requirement. Moreover, the Defendant does not raise this typographical error as a basis for suppressing the results of the search, and even if he had advanced such an objection, guided by Thomas, the Court would have found the typographical error to be insufficient to suppress evidence obtained as a result of the search of Defendant's Toyota Camry pursuant to this fifth search warrant.

## II.   DEFENDANT'S MOTION TO SUPPRESS EVIDENCE OBTAINED AS A RESULT OF SEARCH AND SEIZURE, [DOCKET NO. 22]

Defendant moves the Court for an order suppressing any physical evidence obtained as a result of all of the five above-described search-and-seizures because the five search warrants were issued without sufficient showings of probable cause and were, as a result, issued in error and illegally executed. (Def.'s Motion to Suppress Evidence [Docket No. 22]). At the June 12, 2014, motion hearing, Defense counsel represented on the record that the present motion is limited to a four-corners challenge concerning the sufficiency of the probable cause articulated in each of the warrants' supporting affidavits.[7]

### A.   Standard of Review

The Fourth Amendment guarantees the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures," and that "no warrants shall issue, but upon probable cause, supported by Oath or affirmation." U.S. Const. Amend. IV. The Eighth Circuit has held that "[a]n affidavit for a search warrant need only show facts sufficient to support a finding of probable cause." United States v. Parker, 836 F.2d 1080, 1083 (8th Cir. 1987). Probable cause exists when "a practical, common-sense" evaluation of "all the circumstances set forth in the affidavit" demonstrates "a fair probability that contraband or evidence of a crime will be found in a particular place." Illinois v. Gates, 462 U.S. 213, 238 (1983). "Probable cause is a fluid concept that focuses on 'the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act.'" United States v. Colbert, 605 F.3d 573, 576 (8th Cir. 2010) (quoting Gates, 462 U.S. at 231). "The existence of probable cause depends on whether, in the totality of the circumstances, 'there is a fair probability that contraband or evidence of a crime will be found in a particular

---

[7] The parties declined the opportunity to submit additional briefing after the June 12, 2014, motions hearing. (See Letter to Magistrate Judge [Docket No. 31]).

place.'" United States v. Solomon, 432 F.3d 824, 827 (8th Cir. 2005) (quoting United States v. Murphy, 69 F.3d 237, 240 (8th Cir. 1995) (quoting, in turn, Gates, 462 U.S. at 238)).

As alluded to above, the sufficiency of a search warrant affidavit is examined using "common sense and not a hypertechnical approach." United States v. Grant, 490 F.3d 627, 632 (8th Cir. 2007) (citation and internal quotations omitted). "Therefore, '[w]hen the [issuing judge] relied solely upon the supporting affidavit to issue the warrant, only that information which is found in the four corners of the affidavit may be considered in determining the existence of probable cause.'" United States v. Wiley, No. 09-cr-239 (JRT/FLN), 2009 WL 5033956, at *2 (D. Minn. Dec. 15, 2009) (Tunheim, J.) (quoting Solomon, 432 F.3d at 827; edits in Wiley). "In ruling on a motion to suppress, probable cause is determined based on 'the information before the issuing judicial officer.'" United States v. Smith, 581 F.3d 692, 694 (8th Cir. 2009) (quoting United States v. Reivich, 793 F.2d 957, 959 (8th Cir. 1986)). Nevertheless, "[a] magistrate's 'determination of probable cause should be paid great deference by reviewing courts,'" Gates, 462 U.S. at 236 (quoting Spinelli v. United States, 393 U.S. 410, 419 (1969)). "[T]he duty of a reviewing court is simply to ensure that the magistrate had a 'substantial basis for . . . [concluding]' that probable cause existed." Gates, 462 U.S. at 238-39 (quoting Jones v. United States, 362 U.S. 257, 271 (1960)).

B.   Analysis

Defendant's motion is brief, generic, and devoid of factual or legal argument specifically targeting or individually addressing any of the five search warrants at issue now before the Court. Because Defendant has offered no sufficiently specific factual or legal grounds for suppression, the Court could recommend summarily denying Defendant's Motion to Suppress, [Docket No. 22], solely on the basis that Defendant has failed to meet his burden of production. United States v. Jones, No. 09-cr-260 (DWF/RLE), 2009 WL 4723341, at *4 (D. Minn. Dec. 2,

9

2009) (Erickson, C.M.J.) (citing United States v. Mims, 812 F.2d 1068, 1074 (8th Cir. 1987); United States v. Quiroz, 57 F. Supp. 2d 805, 822-23 (D. Minn. 1999) (Mason, M.J.), adopted by 57 F. Supp. 2d 805, 811 (D. Minn. 1999) (Kyle, J.)). "Nonetheless, in an abundance of caution, we proceed with address[ing] the merits of the Defendant's Motion . . . ." Id. (citing United States v. Edwards, 563 F. Supp. 2d 977, 995 (D. Minn. 2008) (Mayeron, M.J.), adopted by 563 F. Supp. 2d 977, 984 (D. Minn. 2008) (Frank, J.).

### 1. January 3, 2014 Search Warrant

Based on the information provided in Investigator DeRosier's supporting affidavit, the Court finds ample evidence to conclude that the issuing judge had a substantial basis upon which to conclude that probable cause existed for the issuance of the January 3, 2014, search warrant.

As articulated in the facts section above, the January 3, 2014, search warrant's supporting affidavit contains statements by several CRSs and a description of why the officers deemed them reliable. "The statements of a reliable confidential informant are themselves sufficient to support probable cause for a search warrant." United States v. Wright, 145 F.3d 972, 975 (8th Cir. 1998) (internal citations omitted). "The reliability of a confidential informant can be established if the person has a history of providing law enforcement officials with truthful information." Id. DeRosier's affidavit in support of the January 3, 2014, search warrant explicitly states that all three CRSs had proven their reliability by making controlled buys under the direct supervision of law enforcement in the past. (Government Ex. 1 at 6). Analogous to the facts in Wright, under the totality of the circumstances, this information adequately establishes the CRSs' reliability. Wright, 145 F.3d at 975.

Additionally, an informant's recent controlled purchase of a control substance from a residence readily establishes probable cause to issue a warrant to search that residence for further narcotics. United States v. Hart, 544 F.3d 911, 914 (8th Cir. 2008); see also United States v.

Smith, 266 F.3d 902, 905 (8th Cir. 2001) (finding affidavit sufficiently provided probable cause to search based on police direct surveillance of confidential informant's controlled narcotics transaction, even though informant did not have established track record).

Investigator DeRosier's affidavit states that known-reliable CRSs independently informed law enforcement that Defendant had sold and does sell controlled substances, that known-reliable CRSs individually identified (and thus corroborated) Defendant's residence as a place from which Defendant had sold and does sell controlled substances, and that one CRS participated in a successful controlled buy from Defendant at Defendant's residence a mere 72 hours prior to application for the warrant. Accordingly, Investigator DeRosier's affidavit – which included information identifying Defendant's sale of controlled substances at his home and his participation in a controlled buy – contained ample evidence to conclude that probable cause existed for the issuance of the January 3, 2014, search warrant. Judge Floerke had a sufficient basis upon which to find that probable cause existed to conclude that the search would uncover evidence of a crime, and to, accordingly, issue a warrant for the search of Defendant's person, residence, and Toyota Camry. See Gates, 462 U.S. at 236. The Court recommends **DENYING** Defendant's Motion to Suppress, [Docket No. 22], with respect to the January 3, 2014, search warrant.

    2.        **January 8, 2014 Search Warrant**

Based on the information provided in Investigator DeRosier's supporting affidavit, the Court finds ample evidence to conclude that the issuing judge had a substantial basis upon which to conclude that probable cause existed for the issuance of the January 8, 2014, search warrant.

In addition to the probable cause articulated in support of the January 3, 2014, search warrant (rearticulated in the January 8, 2014, affidavit),[8] Investigator DeRosier's January 8 supporting affidavit articulates the results of the January 3, 2014, search of Defendant's person, Defendant's residence, and Defendant's black Toyota Camry, which included the recovery of controlled substances, ammunition, and U.S. currency. The January 8, 2014, affidavit provides probable cause to conclude that a search of Defendant's property would reveal evidence of a crime.

The affidavit further provides sufficient information to conclude that probable cause existed to link evidence of Defendant's crime(s) to the storage locker which was the subject of the January 8, 2014, warrant. Again, representations by known-reliable CRSs are sufficient to support probable cause for a search warrant. Information obtained from CRS #4 and independently corroborated by law enforcement investigation provided Judge Floerke with sufficient information to find probable cause that evidence of a crime would have been found at Defendant's storage locker. See, e.g., United States v. Coleman, 349 F.3d 1077, 1083 (8th Cir. 2003). The Court recommends **DENYING** Defendant's Motion to Suppress, [Docket No. 22], with respect to the January 8, 2014, search warrant.

3.   **January 14, 2014 Search Warrant**

Based on the information provided in the supporting affidavit, the Court concludes that probable cause did not exist for the issuance of the January 14, 2014, buccal swab search warrant.

Compelling an accused to give a DNA sample is a search within the meaning of the Fourth Amendment. Padgett v. Donald, 401 F.3d 1273, 1277 (11th Cir. 2005) (swabbing

---

[8] Which the Court has already determined sufficient to create a substantial basis upon which to conclude that probable cause existed to issue the earlier warrant, section II.B.1, supra.

12

inmates' cheeks for saliva to create a DNA database is a search within the meaning of the Fourth Amendment); Schlicher v. Peters, 103 F.3d 940, 942-43 (10th Cir. 1996) (taking a saliva sample for DNA information is a search within the meaning of the Fourth Amendment); see also United States v. Kraklio, 451 F.3d 922, 923 (8th Cir. 2006) (drawing blood for a DNA sample constitutes a search). Using a swab to extract DNA from a defendant's cheek is invasive; an individual's DNA reveals private medical information, and the act of reaching into the subject's mouth to conduct the swab is an invasion into the body. United States v. Lassiter, 607 F. Supp. 2d 162, 165 (D.D.C. 2009).

Although few courts have considered the issue of whether a warrant for a saliva sample requires proof that DNA evidence exists on the item seized (to which the buccal swab is to be compared), the Court finds guidance in United States v. Pakala, 329 F. Supp. 2d 178 (D. Mass. 2004), and has turned to this case in the past. See United States v. Robinson, No. 11-cr-325(1) (DWF/LIB), 2012 WL 948670, at *1 (D. Minn. Mar. 20, 2012). In Pakala, the court granted the Government's motion to compel handprints, palm prints, fingerprints, and DNA samples from the defendant. Pakala, 329 F. Supp. 2d at 182. In issuing its order, the court observed that the Government had made the required showing of probable cause that the defendant handled the weapon at issue. Id. at 179. Significantly, the court held that the DNA samples could not have been compelled unless the Government first produced evidence demonstrating that the substance on the firearm produced a sufficient DNA sample. Id. at 181.

Similarly, in United States v. Roberts, No. 10-mj-458 (LIB), this Court refused to order a defendant to submit to fingerprinting, palm printing, and/or DNA sampling without a showing by the Government first of "some nexus between the bodily evidentiary items to be seized and the criminal activity." (Order [Docket No. 15], at 7). The Court found it troubling that the

Government had not "even tested the firearm at issue in this case to see whether there are any retrievable fingerprints or DNA testing evidence to which any comparison can be made." Id.

Probable cause in this situation requires a demonstration of a reasonable ground for belief that the Defendant's DNA may match what is found on the firearms seized by law enforcement. Lassiter, 607 F. Supp. 2d at 166 (stating that probable cause requires a showing that a reasonable ground for belief exists that the defendant's DNA will match DNA located on the evidence before granting the Government's motion to compel the defendant to provide a DNA sample).

In the present case, the January 14, 2014, supporting affidavit fails to state that any DNA had been recovered from any evidence. Rather, the affidavit merely states only that Defendant's DNA will be compared to "possible DNA to be recovered" from seized firearms. (Government Ex. 3 at 3) (emphasis added). The affidavit provides no evidence that law enforcement had even yet tested the firearm(s) at issue to see whether there was any retrievable DNA evidence to which any comparison of the DNA sample seized from Defendant could have been made. See United States v. Robinson, 2011 WL 7563020, at *3 (D. Minn. Dec. 2, 2011) report and recommendation adopted, No. 11-cr-325(1) (DWF/LIB), 2012 WL 948670 (D. Minn. Mar. 20, 2012). The affidavit fails to articulate the requisite probable cause necessary to support issuance of the January 14, 2014, buccal swab search warrant.

However, "[u]nder the Leon good-faith exception, disputed evidence will be admitted if it was objectively reasonable for the officer executing a search warrant to have relied in good faith on the judge's determination that there was probable cause to issue the warrant." Grant, 490 F.3d at 632 (citing United States v. Leon, 468 U.S. 897, 922 (1984)). Although the Court concludes that the January 14, 2014, search warrant's supporting affidavit does not set forth facts within its four corners sufficient to demonstrate probable cause for the buccal swab search warrant on the

14

present record, law enforcement's good-faith reliance on that warrant militates against suppressing any evidence obtained in the search. See Leon, 468 U.S. at 919-921 (exclusionary rule does not apply "when an officer acting with objective good faith has obtained a search warrant from a judge or magistrate and acted within its scope"). See also United States v. Johnson, 219 F.3d 790, 791 (8th Cir. 2000) ("Even if we thought the warrant affidavit did not establish probable cause, the good faith exception to the warrant requirement would apply because the affidavit was sufficient to allow an officer to reasonably believe probable cause existed."); United States v. Rugh, 968 F.2d 750, 753 (8th Cir. 1992) ("When police objectively and reasonably believe that probable cause exists to conduct a search based on an issuing judge's determination of probable cause, evidence seized pursuant to the ultimately invalid search warrant need not be suppressed.").

In his supporting affidavit, Investigator Eikam articulates "probable cause" for the warrant in the form of (1) Defendant's participation in controlled buys at Defendant's residence, and (2) the results of both the January 3rd and January 8th search-and-seizures at Defendant's residence and storage unit, which revealed controlled substances and potentially unlawfully-possessed firearms, potentially covered in DNA.[9] (Government Ex. 3). When Investigator Eikam successfully obtained the warrant from Judge Hylden, law enforcement relied in good faith on the findings of Judge Hylden. Investigator Eikam's supporting affidavit indicates that he presented Judge Hylden with specific facts concerning underlying criminal incidents and the recovery of criminal paraphernalia believed to be, in good faith, bearing testable DNA sufficient to create probable cause in support of an application for a buccal swab search warrant. Accordingly, on January 14, 2014, when executing the search warrant for a buccal swab of

---

[9] Investigator Eikam's affidavit states that Defendant had prior felony convictions, indicating it was unlawful for Defendant to possess firearms. (Government Ex. 3).

15

Defendant's DNA, law enforcement appropriately relied on the search warrant issued by Judge Hylden. Additionally, although some district courts have held that absent law enforcement's recovery of comparison sample of DNA, a buccal swab search warrant is unsupported by probable cause, this principle is not so clearly established in this Circuit or across the country that law enforcement unreasonably neglected this requirement. "It was not unreasonable for law enforcement to be unaware of [the above-described] required showing of probable cause prior to seizing the DNA sample from the Defendant. The law in this area is not so clearly established that the officers could reasonably predict that the affidavit lacked sufficient indicia of probable cause." Robinson, 2011 WL 7563020, at *4 (internal quotations omitted).

Additionally, on the present record, the Court finds no independent support for any of the exceptions to the Leon good faith rule in the present record.[10]

Because law enforcement relied in good faith on Judge Hylden's issuance of the buccal swab search warrant, the Court recommends that Defendant's Motion to Suppress, [Docket No. 22], be **DENIED** with respect to the January 14, 2014, search warrant.

### 4.     First January 23, 2014 Search Warrant

Based on the information provided in Investigator Miller's supporting affidavit, the Court finds ample evidence to conclude that the issuing judge had a substantial basis upon which to conclude that probable cause existed for the issuance of the January 23, 2014, search warrant for Defendant's residence, person, and Nissan Pathfinder.

In addition to the information concerning the January 3 and 8 search-and-seizures, the affidavit in support of the fourth search warrant contains statements by a further reliable

---

[10] See Leon, 468 U.S. at 923 (exceptions to the good faith rule when issuing judge "was misled by information in an affidavit that the affiant knew was false or would have known was false except for his reckless disregard for the truth," "where the issuing magistrate wholly abandoned his judicial role," or when the warrant is "so facially deficient – i.e., in failing to particularize the place to be searched or the things to be seized – that the executing officers cannot reasonable presume it to be valid").

confidential informant tying Defendant to again being in the possession of a "substantial quantity" of methamphetamine just 48 hours prior to law enforcement's application for the subject warrant. As articulated in the fact section, above, the CRI had proven reliable due to their prior cooperation with law enforcement in assisting in the seizure of illegally-possessed weapons. As articulated above, statements by reliable confidential informants are sufficient to create probable cause. With the results of the January 3rd and January 8th searches, the statements from the new confidential reliable informant regarding Defendant's very recent possession of a controlled substance, and independent police observation of Defendant driving a gold Nissan Pathfinder and later observing it at Defendant's home, the affidavit provided the issuing judge with sufficient information to conclude that probable cause existed that evidence of a crime would have been found at Defendant's residence, on his person, and/or in his Nissan Pathfinder. The Court recommends **DENYING** Defendant's Motion to Suppress, [Docket No. 22], with respect to the first January 23, 2014, search warrant.

### 5.     Second January 23, 2014 Search Warrant

Finally, based on the information provided in Investigator Miller's supporting affidavit, the Court finds ample evidence to conclude that the issuing judge had a substantial basis upon which to conclude that probable cause existed for the issuance of the second January 23, 2014, search warrant for a second search of Defendant's black Toyota Camry.

Above and beyond the probable cause articulated in the affidavit concerning the January 3 and 8 searches, and even beyond the statements of the new reliable confidential informant, the supporting affidavit states that prior to applying for the fifth warrant, officers performed an exterior drug sniff around Defendant's Camry, as it was parked on a public roadway, and that the canine partner of the K9 officer indicated the odor of a controlled substance near the trunk area

of Defendant's Camry. First and foremost, law enforcement "did not need to have probable cause or even reasonable suspicion to support this scan because a dog sniff of the exterior of a vehicle is not a search." United States v. Gregory, 302 F.3d 805, 810 (8th Cir. 2002) (internal citation and quotations omitted). Second, "the positive indication of a reliable drug-sniffing dog is alone sufficient to provide probable cause for the search of a vehicle for controlled substances." Id.

Accordingly, considering the sniff-alert alone, the affidavit provided the issuing judge with sufficient information to conclude that probable cause existed that evidence of a crime would have been found in Defendant's black Toyota Camry. The Court recommends **DENYING** Defendant's Motion to Suppress, [Docket No. 22], with respect to the second January 23, 2014, search warrant.

### III.   CONCLUSION

Based on the foregoing and all the files, records, and proceedings herein, **IT IS HEREBY RECOMMENDED** that Defendant's Motion to Suppress Evidence Obtained as a Result of Search and Seizure, [Docket No. 22], be **DENIED**.

Dated: June 24, 2014                                                                    s/Leo I. Brisbois
                                                                                                        Leo I. Brisbois
                                                                                                        U.S. MAGISTRATE JUDGE

### N O T I C E

Pursuant to Local Rule 72.2(b), any party may object to this Report and Recommendation by filing with the Clerk of Court, and serving all parties **by July 8, 2014** a writing that specifically identifies the portions of the Report to which objections are made and the bases for each objection. A party may respond to the objections **by July 22, 2014**. Written submissions by any party shall comply with the applicable word limitations provided for in the Local Rules. Failure to comply with this procedure may operate as a forfeiture of the objecting party's right to seek review in the Court of Appeals. This Report and Recommendation does not constitute an order or judgment from the District Court, and it is therefore not directly appealable to the Court of Appeals.